IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGGIE WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 867 |
| ) | |
| CITY OF AURORA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Reggie Walls has sued his former employer, the City of Aurora, alleging it discriminated against him based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). The City of Aurora has moved for summary judgment. For the reasons below, the Court grants the City's motion.

## Background

The following facts are undisputed unless otherwise noted. Reggie Walls was employed by the City of Aurora Police Department for twenty-four years until his retirement on January 31, 2022. He served during that entire period as a patrol officer.

Walls's lawsuit involves his applications for promotion to sergeant during the Department's 2017 and 2020 promotional processes.

The Department's promotional process takes place every three years. The City has a Civil Service Commission that establishes a promotional eligibility list based on the results of the promotional process. During the 2020 process, the final rating of an applicant for sergeant was based on the applicant's performance in the following stages:

(1) a promotional rating process worth 35% of the final rating, (2) a written exam worth 25% of the rating, assessment center exercises worth 30% of the rating, (3) experience and education points worth 10% of the rating, and (5) bonus military points.

During the promotional rating process, a candidate's direct supervisor is assigned to complete the candidate's preliminary promotional rating. The candidate may also submit a self-evaluation to the supervisor to help inform the rating process. The supervisor may recommend the following scores for the applicant: 100 – the applicant should be promoted ahead of his or her peers; 85 – the applicant should be promoted with his or her peers; or 70 – the applicant should be promoted below his or her peers. The supervisor then meets with the applicant to discuss the preliminary rating. An applicant who disagrees with the rating may submit a written appeal to address inaccuracies. Appeals are forwarded the "rating board," which is composed of the Department's chief, deputy chief, commanders, lieutenants, and sergeants.

The rating board members discuss the applicant's preliminary rating with the direct supervisor and consider any accompanying appeal. They then each score the applicant according to the same scale used in the preliminary rating. The scores are averaged to provide the applicant's final promotability rating, which accounts for 35% of the overall rating.

After the rating process, applicants take a written exam, and they are ranked based on the results of that exam and the rating process. The top thirty candidates are invited to the assessment center stage of the testing process. Following the assessment center stage, applicants provide education background and experience information to earn additional points. A preliminary promotional eligibility list is then

generated based on the candidates' promotability rating, written exam, assessment center, education, and experience points.

The final promotional eligibility list is posted after candidates submit military preference bonus points. Applicants are then promoted based on the final promotional list, which expires three years from the date it is finalized.

Walls applied for promotion to sergeant during the 2017 and 2020 promotional processes. During the 2017 process, he received a promotability rating of 85. In accordance with the 2017 promotional process, he appealed that rating to the Chief of Police, Kristen Ziman, who raised his promotability rating to 100. Walls then took the written exam and completed the rest of the 2017 promotion process. He ended up ranked 28th on the final promotional list and was not selected for promotion.

During the 2020 process Walls again received a promotability rating of 85. On the promotional evaluation form, his supervisor stated that Walls would have receive a rating of 100 but for a disciplinary incident that occurred in 2018, in which an internal investigation found that he violated Department policy and was given a five-day suspension. The rating board members then voted, and Walls's final promotability rating was 84.42. Walls did not appeal his rating. He also did not take the written exam or participate in the remainder of the 2020 promotional process.

Walls, who is African American, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination on March 2, 2021. He was given a notice of right to sue on November 19, 2021 and then filed the present lawsuit, alleging failure to promote on the basis of race.

## Discussion

The City of Aurora has moved for summary judgment on Walls's discrimination claim. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018). The Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Id.* Still, inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017). The nonmoving party must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022).

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). At summary judgment, the applicable standard for analyzing racial discrimination claims under Title VII is "whether the evidence would permit a reasonable factfinder to conclude that racial discrimination caused the adverse employment action—here, the failure to promote." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020).

One way of proving employment discrimination under Title VII is the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Logan v. Chicago*, 4 F.4th 529, 536-37 (7th Cir. 2021). Because the parties present their

arguments in the *McDonnell Douglas* terms, the Court also applies that framework. To establish a prima facie case of discrimination on a failure to promote claim, the plaintiff must offer evidence that they were (1) a member of a protected class; (2) qualified for the position; (3) rejected for the position; and (4) the position was given to a person outside the protected class who was similarly or less qualified. *Id.* "If the plaintiff makes out a prima facie case by meeting each of these elements, the burden shifts to the defendant to articulate (not to prove) a legitimate, nondiscriminatory reason for the promotion decision." *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 646 (7th Cir. 2023). If the employer does so, the burden shifts back to the plaintiff to offer evidence that the explanation is pretextual. *Id.*

As an initial matter, the City argues that Walls's claim regarding the 2017 promotion cycle is time-barred. Under Title VII, a charge of discrimination must be filed within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The 2017 process concluded on July 18, 2017 with the release of the final promotional list, which was then in effect for three years—until July 18, 2020. Walls filed his EEOC charge on March 2, 2021. The City contends that the 300-day limitations period for Walls to file a charge regarding the 2017 process began on July 18, 2017 and that his charge was filed well outside the 300-day period. Walls argues that because he could have been promoted at any point during the period in which the 2017 promotional list was effective, he was not rejected and denied promotion until that list expired on July 18, 2020.

Neither party is correct. Seventh Circuit precedent is clear that "'discrete acts' such as a failure to hire or promote someone" each carry their own period of limitations and are not subject to the continuing violation doctrine. *Moore v. Burge*, 771 F.3d 444,

5

447 (7th Cir. 2014). The discrete act at issue regarding the 2017 promotional cycle is not the publication of the list, in which Walls was ranked twenty-eighth. Rather, the relevant discrete acts were each instance over the list's three-year effective period when someone other than Walls was promoted to sergeant. Neither party identifies any such dates. Because the claimed untimeliness of Walls's claim is an affirmative defense on which the City bears the burden of persuasion, the uncertainty requires overruling this defense as a basis for summary judgment.

But even if Walls's claim of discrimination related to the 2017 promotional process is not time barred, he has not produced evidence sufficient to avert summary judgment on any claim arising from that process. Walls identifies only one person who he contends was outside of the protected class, similarly or less qualified, and promoted to sergeant over him during the 2017 cycle—Jeffrey Hahn. On the final promotions list, Hahn was ranked eighteenth, ten spots higher than Walls, who was twenty-eighth. During his deposition, Walls claimed that Hahn was involved in an incident that should have resulted in an investigation and discipline but that no such investigation or discipline occurred. As a result, Hahn did not have discipline on his record in the 2017 promotion process. Walls offers no evidence regarding this incident, and he could not recall what year it occurred.

After his appeal, Walls had a promotability rating of 100—the highest possible. But this accounted for only 35% of his final promotability score and ranking. The City contends that Walls ended up being ranked twenty-eight on the final promotion list— lower than Hahn and the other promoted candidates—because he did poorly on the written exam. Walls does not contest this, nor does he contend that the written exam or

its scoring was discriminatory. And he does not contend that anyone ranked lower than him on the list was promoted over him. Indeed, during his deposition, Walls conceded that after getting the 100 rating he did not disagree with anything else in the 2017 promotion process.

Even if the Court assumes Hahn's incident occurred and that an investigation and discipline would have lowered his promotability rating somewhat, as it did for Walls in the 2020 process, it does not lead to a permissible inference that Walls was not promoted in the 2017 process because of his race. Even if Hahn was removed from the promotions list entirely, nine other candidates were ranked higher than Walls and would have been promoted over him.

The City has thus provided a legitimate, nondiscriminatory, reason why Walls was not promoted—he had a lower score on the written exam and received a lower ranking on the promotions list as a result. Walls points to no evidence that would permit a reasonable jury to find this reason is pretextual. Thus the City is entitled to summary judgment on Walls's claim based on the 2017 promotional process.

The Court next addresses Walls's discrimination claim based on the 2020 promotional process. The City first argues that Walls has failed to make out a prima facie case of discrimination. Relying on *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 558 (7th Cir. 2004), the City argues that a prima facie case of discrimination requires a plaintiff to apply for and be rejected for a position. It contends that Walls withdrew from the process after he received his 84.42 promotability rating, as he did not take the written exam or complete the remaining stages, and that because he withdrew, he was not actually rejected for promotion to sergeant. The Court overrules this

argument.

Walls appropriately points out that in *Hudson*, the Seventh Circuit also said that a plaintiff who had not applied for a position can still make out a prima facie case for discrimination by "demonstrat[ing] that the employer's discriminatory practices deterred [the] plaintiff from applying." *Hudson*, 375 F.3d at 558. Walls contends that he was deterred from completing the application process by the City's alleged discriminatory practices—"the very discriminatory practices he is protesting." *Volling v. Kurtz Paramedic Services, Inc.*, 840 F.3d 378, 384 (7th Cir. 2016) (quoting *Loyd v. Phillips Bros., Inc.*, 23 F.3d 518, 523 (7th Cir. 1994). The City's attempt to distinguish *Hudson*, by saying that it specifically involved deterrence from applying, not deterrence from completing the promotional process, falls flat. The purpose of this exception is to ensure that "[v]ictims of gross and pervasive discrimination" are not "denied relief precisely because the unlawful practices had been so successful as totally to deter" their participation, and to ensure that the law does not "put beyond the reach of equity the most invidious effects of employment discrimination those that extend the very hope of self-realization." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977). The same concerns are implicated whether racial discrimination has deterred a candidate from submitting an application or from completing necessary prerequisites after an initial application is submitted. The City points to no authority that supports such a distinction.[1] Thus the inquiry remains whether Walls produced enough evidence

---

[1] The City's reliance on *Nolan v. Hillard*, 309 Ill. App. 3d 129, 141, 722 N.E.2d 736, 746 (1999), is misplaced. *Hillard* did not involve a claim of discrimination. Moreover, the court determined the relevant plaintiff did not have standing because he had not completed the part of the application process that he was challenging and thus would not have benefitted from a determination that that part of the application was invalid. *Id.*

8

of racial discrimination to sustain his claims through summary judgment.

Ultimately, however, Walls has not produced enough evidence for a reasonable jury to conclude that he was not promoted because of his race or that his promotability rating was the product of racially discriminatory practices. Walls argues that his initial promotability rating of 85 and final promotability rating of 84.42 were the product of racial discrimination and that the City's nondiscriminatory explanation for his rating—that it was lower because he committed a disciplinary infraction that resulted in a five-day suspension in 2018—is pretextual. More specifically, he argues that the use of his policy violation in the promotability rating was discriminatory. Walls contends that two white officers promoted to sergeant during the 2020 promotional cycle, Christine Tunney and Todd Range, were similarly situated because they also had policy violations but were still promoted.

Walls bears the burden of submitting evidence that would permit a reasonable jury to find that the City's assertion that his promotability rating was lower because of his policy violation is pretextual—that it is "a lie, specifically a phony reason for some action." *Kinney*, 76 F.4th 635 at 646. He has not done so. Walls argues there is no evidence in the record of any policy or procedure regarding the use of Office of Professional Standards (OPS) investigation findings as a factor in determining a candidate's promotional rating. But courts in the Seventh Circuit "have never required proof of a written policy to show that an employer's decision was not a pretext for discrimination." *Williams v. Airborne Exp., Inc.*, 521 F.3d 765, 769 (7th Cir. 2008).

---

But Walls did complete the promotability rating process, and that is the process which he contests.

9

Moreover, Chief Ziman testified that it was the department's practice to bring forth the disciplinary findings from an officer's OPS investigation if the finding occurred during the past promotional rating period. Walls points to no evidence that contradicts this.

The only other evidence of pretext that Walls cites is the declaration of Sergeant Edward Corral, who stated that he was "not aware of any White officer being punished following an OPS investigation, then that being used against that officer in his/her promotional rating." Decl. of Edward Corral, Pl.'s Resp., Ex. C ¶ 11. But the 2020 promotion cycle was Corral's first time participating as a member of the Review Board. More importantly, Corral's lack of awareness of a specific situation where a disciplined white officer had the discipline overlooked in the promotional process does not really establish anything of value. The threshold question is whether there were any white officers in the process who had been disciplined; that is what would make another officer similarly situated to Walls. Then, but only then, the question would be how that discipline affected the white officer's promotion or promotional ranking. In other words, Corral's statement falls short at the threshold step; he does not indicate, in the first instance, that there was any white officer in the promotional pool who had been disciplined. In short, Corral's statement does not indicate that the consideration of OPS disciplinary findings in Walls's rating was pretextual.

The promotions of Christine Tunney and Todd Range also do not provide evidence of racial discrimination or pretext. First, the evidence does not indicate that Todd Range is an appropriate comparator. Although the conduct of similarly situated employees need not be identical to that of the plaintiff, it has to at least be comparable, which requires showing that they "engaged in comparable rule or policy violations."

*Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66.  Walls received a five-day suspension after an incident in which his close personal relationship with a person of interest in a robbery caused him to delay in reporting that person's identity and whereabouts to the investigations team, and the person was subsequently able to leave the state and engage in further criminal activity.  Range, by contrast, received a written reprimand because he did not call in his pursuit of a juvenile on a bicycle and did not turn his lights or sirens on during that pursuit.  These do not reflect comparable policy violations, and Walls also fails to identify any evidence that Range was treated more favorably in the promotional rating process—particularly given that Range also received a promotability rating of 85.

Tunney received a three-day suspension for leaving her service weapon in the restroom of a bar.  It was found by a "responsible citizen," recovered by the department, and confiscated.  Def.'s Resp., Ex. J.  The violation itself is somewhat more comparable to that of Walls in terms of risk generated to the public, but in Tunney's case the violation was unintentional and did not actually result in any ongoing harm or criminal activity.  More importantly, the treatment of Tunney's disciplinary infraction still does not provide evidence that would permit a finding that the consideration of Walls's OPS findings were pretextual.  At the time of the 2020 promotion rating, Walls's OPS investigation was complete, substantiated findings had been made and reported, and a disciplinary order imposed.  That was not the case for Tunney.  The investigation into her conduct was ongoing, and no substantiated findings were made until after the 2020 promotional rating process concluded.  Walls points to no evidence that suggests that incidents without substantiated OPS findings affect an applicant's rating.

In sum, Walls has not produced evidence that would permit a reasonable jury to determine that he was not promoted because of his race, that the consideration of his disciplinary infraction in the promotion rating process was a pretext for racial discrimination, or that his promotability rating was otherwise the result of racial prejudice.

## Conclusion

For the foregoing reasons, the Court grants the City of Aurora's motion for summary judgment [dkt. no. 28] and directs the Clerk to enter judgment in favor of the defendant and against the plaintiff..

```
                                        _____
                                                MATTHEW F. KENNELLY
                                              United States District Judge
```

Date: March 18, 2024